NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| J and S, by their Attorney-in-Fact, RACHEL SOROTZKIN, and BRAINBUILDERS LLC,<br><br>Plaintiffs,<br>v.<br>ABALINE PAPER PRODUCTS, INC., AETNA LIFE INSURANCE COMPANY and ABC PLAN, said defendant being the employer sponsored healthcare plan herein.<br><br>Defendants. | Civil Action No.: 2:20-cv-08234<br><br>OPINION |

**CECCHI, District Judge.**

**I.     INTRODUCTION**

This matter comes before the Court by motions filed by Defendants Aetna Life Insurance Company ("Aetna") (ECF No. 14) and Abaline Paper Products, Inc. ("Abaline") (collectively "Defendants")[1] (ECF No. 15) to dismiss the Complaint (ECF No. 1, "Compl.") of Plaintiffs Rachel Sorotzkin ("Sorotzkin"), in her capacity as attorney-in-fact for "J" and "S," and Brainbuilders LLC ("Brainbuilders") (collectively, "Plaintiffs") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs opposed Defendants' motions (ECF No. 17), and Defendants replied (ECF Nos. 22, 23). The Court has considered the submissions made in support of and in opposition to the motions and decides the motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the Court grants Defendants' motions to dismiss.

---

[1] Plaintiffs also bring this action against "ABC Plan," the "employer sponsored healthcare plan" at issue.

## II. BACKGROUND

### a. Factual Background

This action arises out of Plaintiffs' allegations that Abaline, J's former employer and the administrator of his employee health-care plan (the "Plan"), and Aetna, the third-party administrator of the Plan, unlawfully denied J's claims for reimbursement for claims covering certain treatments provided to one of his dependents pursuant to the Plan. Specifically, the treatments at issue concern applied behavior analysis ("ABA") that Brainbuilders, a behavioral health provider, provided to S in connection with S's autism spectrum disorder ("ASD"). *See generally* Compl. Plaintiffs allege that "the entire amount" of S's treatments "remains outstanding," (*id*. at ¶ 24), even though J has paid the premiums due under the terms of the Plan. *Id.* at ¶ 25. Plaintiffs also allege that J has "exhausted the Plan's internal review process" concerning these reimbursement claims. *Id.*

J was an employee of Abaline from September through December 2018 (the "Relevant Period") and is the father of S, a 9-year-old child and a dependent-beneficiary under the Plan. Compl. at ¶¶ 8–10. S, who has been diagnosed with ASD, has been treated for this disorder by the staff of Brainbuilders since September 2015. *Id.*

In September 2018, immediately prior to joining Abaline, J resigned from his position with another company. *Id.* at ¶¶ 9–11. Plaintiffs allege that, at that time, J was assured by Abaline that the Plan would cover S's ABA treatments, and that J "made the move to [Abaline]" as a result. *Id.* Plaintiffs allege that, thereafter, Abaline nevertheless denied J's reimbursement claims for S's ABA treatments as Abaline supposedly claimed that such treatments were not covered under the Plan. *Id.* at ¶¶ 14–15.

In support of their reimbursement claims, Plaintiffs also flagged to Abaline that the Plan's operative summary plan description ("SPD") expressly provided that it covered treatments related to ASD diagnoses so long as a "physician or behavioral health provider order[ed] it as a part of [the beneficiary's] treatment plan." Compl., Ex. A at 25. Notably, Defendants neither appear to contest that Brainbuilders constitutes a "behavioral health provider" within the meaning of the Plan, nor that Brainbuilders provided S with ABA treatments as a part of S's ASD "treatment plan." Nonetheless, Plaintiffs allege that Defendants ultimately "produced an internal PowerPoint memorandum, labeled 'Confidential – For Internal Use Only,' that purportedly indicates that [S's ABA treatments] [were] excluded" under the Plan. *Id*. at ¶ 15.

Defendants also note that the Plan constituted a "self-funded" ERISA plan (ECF Nos. 14, and 15).[2] The parties agree that self-funded plans "are wholly exempt from state law . . . [p]ursuant to 29 U.S.C. § 1144 and established case law." *Id*. at ¶ 20. The parties further assert that a self-funded plan is co-administered by an employer, wherein the employer, instead of the underlying insurance provider, assumes the ultimate responsibility for the cost of a beneficiary's claims above a certain coverage threshold. *Id.* at ¶¶ 18–19. To manage Abaline's 'self-funded' risk, Plaintiffs allege that Abaline purchased "stop-loss" insurance coverage with Aetna (also a third-party administrator for the Plan) that would reimburse Abaline for claims above the Plan's coverage threshold, namely "catastrophic or more than expected" claims. *Id*. However, stop-loss insurance aside, the parties appear to agree that Abaline still maintained ultimate financial responsibility for "catastrophic or more than expected" claims submitted by Plan participants. *Id.*

---

[2] Plaintiffs argue that the Plan is not a self-funded plan but, rather, is a "fully-insured plan," which would not be wholly exempt from state law. *Id.* at ¶ 21. However, as described below, Plaintiffs have presented no particularized factual allegations in support of this claim. *See Sanchez v. Poag*, No. 11-3824, 2016 WL 1134536, at *2 (D.N.J. Mar. 22, 2016) ("[C]onclusory allegation[s] [are] insufficient to state a claim for relief.").

### b. Procedural Background

Plaintiffs filed the Complaint on July 5, 2020. ECF No. 1. Sorotzkin purports to bring her claims as an "attorney-in-fact" in a representative capacity on behalf of J and S.[3] *Id*. Brainbuilders purports to bring its claims as an "assignee" of J and S after J and S allegedly "executed an assignment of benefits and an assignment of the right to pursue legal and administrative remedies under their health insurance plan for the benefit of Brainbuilders." *Id*. at ¶ 2. The Court notes, however, that the Plan provides that "[u]nless [Aetna] ha[s] agreed to do so in writing and to the extent allowed by law, [Aetna] will not accept an assignment to an out-of-network provider or facility under this plan," (*id*., Ex. A at 81), and that Aetna has not consented to J's purported assignment of rights to Brainbuilders under the Plan. ECF No. 14-1 at 4–7.

In Count One, Plaintiffs allege that Defendants wrongfully denied J and S benefits owed to them "under the terms" of the Plan, in violation of ERISA §502(a)(1)(B) (codified as 29 U.S.C. § 1132(a)(1)(B)). *Id.* at ¶¶ 27–29. In Count Two, Plaintiffs allege that Defendants "violated their fiduciary duties" under ERISA §502(a)(3) (codified as 29 U.S.C. 1132(a)(3)) by denying coverage for S's ABA treatments after Abaline allegedly represented to J that such treatments would be covered under the Plan. *Id.* at ¶¶ 30–33. Finally, in Counts Three and Four, Plaintiffs allege that Defendants violated the New Jersey Autism Mandate (N.J.S.A. § 17B:27A-19.20) and the New Jersey Mental Health Parity Law (N.J.S.A. § 17B:27A-19.7) by denying J's claims for reimbursement in connection with S's ABA treatments. *Id.* at ¶¶ 34–37.

---

[3] "[A]n attorney-in-fact may bring a claim in a representative capacity [based on a valid power of attorney]." *Med-X Glob., LLC v. Azimuth Risk Sols., LLC*, No. 17-13086, 2018 WL 4089062, at *3 (D.N.J. Aug. 27, 2018) (citation omitted).

### III. LEGAL STANDARD

#### a. Federal Rule of Civil Procedure 12(b)(1)

A court, on the motion of a party or *sua sponte*, must dismiss a claim under Rule 12(b)(1) where it lacks subject matter jurisdiction. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). When addressing a challenge to subject matter jurisdiction, "the court must start by determining whether [it is] dealing with a facial or factual attack to jurisdiction." *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). Here, Defendants "filed the attack before [they] filed any answer to the Complaint or otherwise presented competing facts. Their motion[s] [are] therefore, by definition, a facial attack." *Silverberg v. City of Philadelphia*, No. 19-2691, 2020 WL 108619, at *3 (E.D. Pa. Jan. 8, 2020). A facial attack challenges the "sufficiency of the plaintiff's pleadings on jurisdictional grounds" where the jurisdictional facts are not in dispute. *Brown v. Tucci*, 960 F. Supp. 2d 544, 561 (W.D. Pa. 2013) (citing *Petruska v. Gannon University*, 462 F.3d 294, 302, n.3 (3d Cir. 2006)). For purposes of a facial attack, courts accept as true all well-pleaded factual allegations, viewing them in the light most favorable to the party asserting jurisdiction. *In re Kaiser Group Int'l, Inc.*, 399 F.3d 558, 561 (3d Cir. 2005).

#### a. Federal Rule of Civil Procedure 12(b)(6)

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). In evaluating the sufficiency of a complaint, a court must also draw all reasonable inferences in favor of the non-moving party. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions'

devoid of further factual enhancement," will not withstand dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (citations omitted).

## IV. DISCUSSION

Defendants argue, among other things, that the Complaint warrants dismissal because Sorotzkin lacks Article III standing to bring her claims on behalf of J and S, and Brainbuilders has otherwise failed to state any claims for relief. ECF Nos. 14-1, 15-1.

### a. Sorotzkin Lacks Article III Standing

As noted above, Sorotzkin purports to bring her claims as an "attorney-in-fact" in a representative capacity on behalf of J and S, who Sorotzkin alleges executed a power of attorney in her favor regarding any legal claims that they maintain in connection with the Plan. ECF No. 17 ("Opp.") at 3–4. Defendants argue that Sorotzkin lacks standing to sue as "the executed power of attorney that Plaintiffs have produced . . . fails to comply with New Jersey law and is therefore ineffective."[4] ECF No. 22 at 3, Certification of Patricia A. Lee ("Lee Cert."), Ex. 1; ECF No. 23.

An attorney-in-fact acting as the legal representative of a third-party may "satisfy the injury-in-fact requirement for constitutional [(Article III)] standing" so long as the power of attorney grant was valid. *See Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, No. 04-08510, 2011 WL 4005321, at *5, n.13 (S.D.N.Y. Sept. 1, 2011), *aff'd sub nom.*, 726 F.3d 62 (2d Cir. 2013). Under New Jersey law, "[a] power of attorney must be in writing, duly signed and acknowledged in the manner set forth in R.S.46:14-2.1." N.J. Stat § 46:2B-8.9. Pursuant to N.J. Stat § 46:14-2.1(b) "a subscribing witness shall appear before a [notary public] . . . and swear that

---

[4] The Court considers Plaintiffs' power of attorney form because it is "integral" to Plaintiffs' claims. *Dix v. Total Petrochemicals USA, Inc.*, No. 10-3196, 2011 WL 2474215, at *1 (D.N.J. June 20, 2011) ("[A]n undisputedly authentic document may be considered on a 12(b)(6) motion even though it is not referenced in or attached to the complaint if the document is 'integral to' the complaint.").

he or she witnessed the maker of the instrument execute the instrument as the maker's own act." *Id*. (emphasis added). Moreover, under N.J. Stat § 46:14-2.1(b), the notary public must also "sign a certificate stating that . . . the [subscribing] witness personally appeared before the [notary public]" and "that the [notary public] was satisfied that the person who made the acknowledgment or proof was the . . . [subscribing] witness to the instrument." *Id.*

Here, Sorotzkin's proffered power of attorney form lacks the required specificity under N.J. Stat § 46:14-2.1(b). *See* Lee Cert., Ex. 1. First, the Court is unable to decipher whether a subscribing witness executed the form as Plaintiffs only provided a redacted version to the Court. *Id.* Second, to the extent that a subscribing witness executed the form, the field within the notary public's certificate of acknowledgement indicating who appeared before the notary public was nevertheless left blank. *Id.* Third, it is unclear where the form was executed—whether in Monmouth County or Ocean County. *Id.* Accordingly, Sorotzkin's proffered power of attorney form is invalid, and she therefore lacks Article III standing to bring her claims on behalf of J and S.

Nonetheless, the Court will provide Sorotzkin with an opportunity to file an amended complaint to cure the deficiencies noted herein. *See Pers. Image, PC v. Tech Briefs Media Grp. Med. Plan*, No. 20-3747, 2021 WL 486905, at *4 (D.N.J. Feb. 10, 2021) (permitting plaintiff leave to amend their complaint to "cure the deficiencies" in plaintiff's proffered power of attorney form where there was "no [valid] . . . acknowledgment"). In the amended complaint, Plaintiffs should fully explain the nature of the form[5] and its compliance with the execution requirements under

---

[5] Plaintiffs may also choose to execute a new power of attorney form and attach it to the amended complaint.

New Jersey Law, including but not limited to identifying the subscribing witness and the location in which the form was signed.

### b. Brainbuilders is Barred from Bringing its Claims

Defendants argue that Brainbuilders is barred by the Plan's anti-assignment clause (the "Anti-Assignment Clause") from bringing its ERISA claims against Defendants, and that ERISA (29 U.S.C. § 1144) preempts Plaintiffs' state law claims against Defendants (*see Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 371, n.6 (2002) (ERISA prohibits states from regulating self-funded plans)). ECF No 14-1 at 4–7, 17–20; ECF No. 15-1 at 4–7, 18–20.

#### i. ERISA Claims – Counts One and Two

Plaintiffs bring their claims in Counts One and Two under Sections 502(a)(1)(B) and 502(a)(3), which expressly provide a private enforcement mechanism for participants, beneficiaries, and fiduciaries of ERISA governed health-care plans. The parties agree that healthcare providers, like Brainbuilders, may also bring claims under Sections 502(a)(1)(B) and 502(a)(3) after executing a valid assignment of rights with one of the aforementioned parties. *See, e.g.*, *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 374 (3d Cir. 2015) ("[A]n assignment of . . . right[s] . . . is sufficient to confer [statutory] standing . . . under ERISA."). However, such an assignment of rights is not valid where the ERISA health-care plan contains an "anti-assignment clause" that forbids the assignment of such rights. *See, e.g.*, *Univ. Spine Ctr. v. Aetna, Inc.*, 774 F. App'x 60, 63 (3d Cir. 2019) ("[A]nti-assignment clauses in ERISA-governed health insurance plans are generally enforceable.") (citations omitted); *see also Univ. Spine Ctr. v. Highmark, Inc.*, No. 17-13660, 2018 WL 3993457, at *5 (D.N.J. Aug. 21, 2018) (dismissing claims under Sections 502(a)(1)(B) and 502(a)(3) in light of valid a "clear and unambiguous . . . anti-assignment clause in the Plan Contract").

Here, Plaintiffs note that "J, on behalf of himself and on behalf of S, assigned his right to pursue legal and administrative remedies against Defendants to Brainbuilders." Opp. at 4. Plaintiffs acknowledge, however, that the Plan contains an Anti-Assignment Clause that provides "[u]nless we [(Aetna)] have agreed to do so in writing and to the extent allowed by law, we will not accept an assignment to an out-of-network provider or facility under this plan." Compl., Ex. A at 81. Moreover, Plaintiffs concede that Aetna has not consented to J's purported assignment of rights to Brainbuilders under the Plan—including the right to sue the Plan's administrators in connection with their duties under the Plan. Still, Plaintiffs argue that J's assignment of rights to Brainbuilders is "valid with regard to [claims against] . . . Abaline" because the Anti-Assignment Clause fails to expressly reference Abaline by name.[6] Opp. at 4.

However, regardless of whether the Anti-Assignment Clause (1) fails to expressly reference Abaline by name or (2) dictates that only Aetna (as opposed to Abaline) may consent to an assignment of rights under the Plan, it nonetheless "clear[ly] and unambiguous[ly]" covers all claims arising under the Plan, including those brought against Abaline in connection with its duties as the Plan administrator. *See Highmark*, 2018 WL 3993457, at *5 (finding a "clear and unambiguous" ERISA plan's anti-assignment clause enforceable as to claims against defendant); *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4600, 2018 WL 1420496, at *5 (D.N.J. Mar. 22, 2018) (barring claims against employer under ERISA plan's anti-assignment clause where the plan categorically provided that the beneficiary could not assign any rights under the plan); Compl., Ex. A at 81.

---

[6] Plaintiffs concede that J's assignment of rights to Brainbuilders is not valid regarding any claims brought against Aetna. Opp. at 4.

Accordingly, as Aetna has not consented to J's purported assignment of rights to Brainbuilders under the Plan, Brainbuilders lacks statutory standing to bring its ERISA claims against Defendants.

Nevertheless, insofar as Plaintiffs can cure the deficiencies in their pleadings as discussed herein, the Court notes that their allegations support potentially cognizable ERISA claims. First, in Count One, Plaintiffs seek to recover under Section 502(a)(1)(B), which dictates that a plaintiff must demonstrate that "the benefits are actually due; that is, he or she must have a right to benefits that is legally enforceable against the plan and that the plan administrator improperly denied him or her those benefits." *See Univ. Spine Ctr. v. Anthem Blue Cross of California*, No. 19-12639, 2020 WL 814181, at *5 (D.N.J. Feb. 18, 2020) (citing *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006)). Here, as Plaintiffs allege that Defendants denied J and S benefits supposedly due under the terms of the Plan, Plaintiffs' claim may be viable. Second, in Count Two, Plaintiffs assert a claim under Section 502(a)(3), which enables fiduciaries of ERISA governed health-care plans to bring claims against the plan's administrators concerning, among other things, alleged misrepresentations that the plan's administrators made in connection with administering the plan. *See Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Bollinger, Inc.*, No. 13-2760, 2013 WL 4502083, at *3 (D.N.J. Aug. 22, 2013), *aff'd*, 573 F. App'x 197 (3d Cir. 2014). Similarly, Plaintiffs' claim in Count Two against Abaline is potentially actionable as Plaintiffs allege that Abaline, while acting as the Plan administrator, assured J that S's "ABA [treatments] would be covered" under the Plan and then, in reliance on this promise, "J made a

move to [Abaline]" as an employee, only for Abaline to thereafter deny J reimbursement claims for S's ABA treatments under the Plan.[7] Compl. at ¶¶ 9–16, 30–33.

## ii. State Law Claims – Counts Three and Four

Defendants next argue that the Complaint's state-law claims are preempted by ERISA as the operative Plan is "self-funded." ECF No. 14-1 at 17; ECF No. 15-1 at 18. Alternatively, while Brainbuilders concedes that ERISA prohibits states from regulating self-funded plans pursuant to 29 U.S.C. § 1144 (Compl. at ¶ 20), it argues that the Plan is actually a "fully-insured plan"—a type of ERISA plan that is not exempt from state law—and is "masquerading as a self-funded plan." *Id*. at ¶ 21. In support, Brainbuilders highlights that Abaline purchased "stop-loss" insurance coverage from Aetna, which, as noted above, serves to reimburse Abaline for claims it pays above the Plan's coverage threshold. *Id*. at ¶ 22.

Brainbuilders' argument is misplaced as stop-loss insurance coverage does not turn a "self-funded employee benefit plan" into a regulated "insurance provider" under ERISA where the primary plan administrator (here, Abaline) does not delegate its ultimate financial responsibility under the terms of the Plan. *Wausau Supply Co. v. Murphy*, No. 13-698, 2014 WL 4717068, at *6 (W.D. Wis. Sept. 22, 2014) (quoting *Bill Gray Enters., Inc. Emp. Health & Welfare Plan v. Gourley*, 248 F.3d 206, 209 (3rd Cir. 2001) ("[W]hen an ERISA plan purchases stop-loss insurance but does not otherwise delegate its financial responsibilities to another third-party insurer, it

---

[7] The Complaint's claim in Count Two would not be viable against Aetna, however, because the Complaint does not allege that Aetna offered any misrepresentation in connection with administering the Plan. *See Brogdon v. Sungard Data Sys., Inc.,* No. 04-4388, 2005 WL 1252270, at *5 (D.N.J. Apr. 18, 2005) ("[W]here an alleged breach of fiduciary duty relates to 'the interpretation of plan documents and the payment of claims,' ERISA Section 502(a)(1)(B) already provides a remedy 'that runs directly to the injured beneficiary' and a remedy under ERISA Section 502(a)(3) is thus inappropriate.") (quoting *Vanity Corp. v. Howe*, 516 U.S. 489, 512 (1996)).

remains an uninsured self-funded welfare plan for ERISA preemption purposes.")). Accordingly, as the Plan is fundamentally "self-funded" regardless of whether Abaline maintained stop-loss insurance coverage, ERISA preempts the Complaint's state-law claims.[8]

## V.　CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss (ECF Nos. 14, 15) are granted and Plaintiff's Complaint (ECF No. 1) is dismissed without prejudice. Plaintiffs shall have thirty (30) days from entry of this Opinion to submit an amended complaint that addresses the deficiencies identified herein. An appropriate Order accompanies this Opinion.

**DATED**: May 27, 2021

　　　　　　　　　　　　　　　　　　　　　　　　**CLAIRE C. CECCHI, U.S.D.J.**

---

[8] To the extent that Sorotzkin would have Article III standing in this action, her claims in Counts Three and Four would nevertheless be preempted for the reasons described above. Further, while Defendants also argue that Plaintiffs' state-law claims warrant dismissal because "[t]here is no private cause of action to enforce the statutes on which Plaintiffs rely," (ECF No. 14-1 at 14; ECF No. 15-1 at 15), the Court does not address this argument as ERISA preempts these claims to the extent that they exist.

12